IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CAMPBELL TRANSPORTATION COMPANY, INC., | ) ) ) | Civil Action No. 14 – 1716 |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) ) | |
| ALPHA PA COAL TERMINAL, LLC, | ) ) | ECF No. 21 |
| Defendant, | ) ) ) | |
| And | ) ) | |
| ALPHA PA COAL TERMINAL, LLC, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| POWELL CONSTRUCTION COMPANY, INC., HUNGATE ENGINEERING, P.C., and GEOMECHANICS, INC., | ) ) ) ) | |
| Third-Party Defendants. | ) | |

## OPINION ON MOTION TO DISMISS COUNTERCLAIM

Lenihan, M.J.

Before the Court is Plaintiff's Motion to Dismiss the Counterclaim filed by Alpha PA Coal Terminal, LLC (ECF No. 21). For reasons more fully set forth below, the Court will deny Plaintiff's Motion.

I. **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Campbell Transportation Company, Inc., ("CTC") filed this lawsuit against Defendant Alpha PA Coal Terminal, LLC ("APACT"), to recover damages for breach of a

construction contract. The Complaint alleges that APACT has failed to pay (1) the remaining balance owed on the construction work, (2) the balance for performing the remedial work, and (3) the balance incurred by offloading the materials used when performing the remedial work. (*See* Compl., ECF No. 1.)

On February 17, 2015, APACT filed an Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint. (ECF No. 11). In its Counterclaim, APACT asserts that CTC is liable to it for Breach of Contract (Count I) and Breach of Warranty (Count II) relating to the October 15, 2014 failure of the retaining wall constructed by CTC under its Construction Agreement with APACT. In both counts, APACT seeks, inter alia, "all costs and expenses, including reasonable attorneys' fees and litigation costs...." (Compl. at ¶¶ 30 and 34.)

On March 10, 2015, CTC filed a Motion to Dismiss APACT's Counterclaim (ECF No. 21), limited to APACT's request for attorneys' fees and expenses associated with the litigation. APACT filed a Brief in Opposition to Plaintiff's Motion to Dismiss on March 31, 2015 (ECF No. 31). On April 14, 2015, CTC filed a Reply Brief (ECF No. 32).

The Complaint alleges that on June 26, 2014, CTC and APACT entered into a Construction Agreement under which CTC agreed to construct "a retaining wall by driving and anchoring sheet piles; based on engineered design, around four cells at the LaBelle harbor. (Compl. at ¶12). Construction of the retaining wall began on August 21, 2014. (Compl. at ¶15).

On October 15, 2014, CTC alleges that the retaining wall failed due to a design defect in the original engineering design. (Compl. at ¶22). On October 17, 2014, APACT advised CTC that it was investigating the incident to determine the cause of the failure. (*See* Ex. E to Compl., ECF No. 1-3 at 1-2.) APACT subsequently notified CTC on October 21, 2014, that its

investigation revealed that CTC's "construction of this project was not performed in compliance with the plans/drawings provided" and CTC admittedly failed to" install sheet pilings to refusal". (*See* Ex. F to Compl., ECF No. 1-3 at 3-4.) As a result, on October 21, 2014, APACT demanded that CTC correct the failure and remediate the site pursuant to a third-party remediation plan. (*Id.*)

On October 23, 2014, CTC agreed to perform initial remediation work on the failed retaining wall upon review and approval by APACT and CTC of an approved remediation plan provided by APACT's third-party engineering firm. (*See* Ex. G to Compl., ECF No. 1-3 at 5-6.) CTC disagreed that such remediation work should be performed at its own expense and requested details of APACT's investigation. (*Id.*) Allegedly APACT did not provide any remediation plan in response to CTC's October 23, 2014 letter, nor did APACT provide details of its investigation. (Compl. at ¶¶30-31.)

On October 23, 2014, APACT advised CTC that it considered CTC's refusal to begin the remedial work on the afternoon of October 23, 2014, at its own expense, to be an event of default under the Construction Agreement, and that it expected CTC to cure the default by proceeding with the remediation work at no cost to APACT. (*See* Ex. H to Compl., ECF No. 1-3 at 7-8.) Both parties subsequently agreed that CTC would perform the remediation work at its own expense while retaining its right to reimbursement from APACT. (*See* Exs. I & J to Compl., ECF No. 1-3 at 9-12). On repeated occasions, CTC requested a copy of the comprehensive remediation plan and the survey of the failed areas of the wall, which APACT failed to provide. (*See* Exs. K & L to Compl., ECF No. 1-3 at 13-16; *see also* Compl. at ¶41.)

CTC began removing the sheet piles of the retaining wall, H-piles and certain fill

3

material surrounding those items on November 10, 2014. (Compl. at ¶42.) On November 17, 2014, APACT advised CTC that it considered CTC to be in default of the Construction Agreement and demanded that CTC cure the default by performing additional remediation work, specifically, "(1) removal all of the retaining walls, (2) remove all of the H-piles (including all beams affixed to any H-piles), (3) remove all of the fill material, and (4) remove mooring cell numbers 17, 18 and 19." (*See* Ex. M to Compl., ECF No. 1-3 at 17-18; *see also* Compl. at ¶46.) APACT never provided an engineering remediation plan and advised on November 24, 2014 that it had not yet received any engineering analysis, remediation plan, or design or plan for constructing the new retaining wall. (Compl. at ¶¶47, 57-59.) CTC agreed to remove all of the retaining walls and all of the H-piles but refused APACT's remaining requests because neither of the additional requests was applicable to the remediation of the October 15, 2014 failure. CTC asserts that it has not created an event of "Default" and has fulfilled all conditions set forth in the Construction Agreement. (*See* Ex. N to Compl., ECF No. 1-3 at 19-21; *see also* Compl. at ¶52.)

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the

5

plaintiff's claims are based upon those documents. Id. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. ANALYSIS

CTC's Motion to Dismiss APACT's Counterclaim, which is actually a partial motion or, perhaps more appropriately, a motion to strike as suggested by APACT,[1] requests only dismissal of the demand for attorney's fees and litigation costs on the grounds that APACT failed to assert any contractual, statutory or other basis which would permit such an award. Neither party disagrees that under Pennsylvania law, a party cannot recover attorney's fees "unless there is express statutory authorization, a clear agreement of the parties or some other established exception." See Snyder v. Snyder, 620 A.2d 1133, 1138 (Pa. 1993) (citations omitted). APACT argues that it is entitled to attorney's fees and costs pursuant to Section 31.2 of the Construction Agreement. (*See* Ex. B to Compl., ECF No. 1-2 at 30.)

CTC argues that Section 31.2 of its Construction Agreement is inapplicable to APACT's counterclaim allegations because (1) APACT failed to allege any pre-failure event of "Default", (2) APACT has not pled compliance with the necessary steps to take when a pre-failure "Default" has occurred pursuant to Section 31.2, and (3) at the time APACT alleged a "Default" that allegation was solely related to CTC's post-failure remediation work following the October 15, 2014 wall failure.

---

[1] *See* ECF No. 31 at 4. A motion to strike pursuant to Rule 12(f) tests whether the Complaint conforms to the pleading requirements of the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s requirement of a "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as the requirements of facial plausibility under Iqbal and Twombly, *supra*.

In support of its position, CTC argues that Section 31.2 applies only to events of "Default" which are defined in the Construction Agreement as follows:

> If Contractor shall at any time: (a) fail to commence the Work in accordance with the provisions of this Agreement; (b) abandon the Work; (c) experience an Insolvency Event; (d) refuse or fail to supply enough properly skilled workers or equipment or materials of the proper quality to perform the Work; (e) fail to prosecute the Work with sufficient promptness and diligence or fail to complete the Work to Company's satisfaction in accordance with the Construction Schedule; (f) fail to make timely payments to Contractor's labor, subcontractors, materialmen, or suppliers; (g) disregard or otherwise fail to comply with laws, ordinances, rules, or regulations applicable to this Agreement or the Work as demonstrated by a pattern of violations or other clear evidence disclosed to Company of such non-compliance; (h) fail to prosecute the Work in a skillful or safe manner; or (i) materially fail to comply with any provision of this Agreement (each of the foregoing being a "Default")[.]

*See* Construction Agreement, §31.2 (ECF No. 1-2 at 30). CTC further argues that APACT failed to take the following required steps after allegedly pleading an event of "Default":

> [P]rovide written notice to Contractor that specifies the nature of the Default and either (i) terminates the Agreement for cause effective on the date specified in the written notice, or (ii) demands that such Default be cured by Contractor to the satisfaction of Company within such a reasonable time period as specified by Company in its written notice. In the event that Company demands that a Default be cured by Contractor, and Contractor fails to cure such a Default to the satisfaction of Company or within the specified time period, Company, at its sole option and without prejudice to any other rights that it has under this Agreement, and upon written notice to the Contractor, may either (1) immediately terminate the Agreement for cause, or (2) *take such steps as are reasonably necessary to overcome the Default condition, in which case Contractor shall be liable to Company for any and all reasonable costs and expenses (including reasonable attorneys' fees and litigation costs) incurred by Company in connection therewith.*

Id. (emphasis added).

7

APACT asserted in its brief in opposition to the motion to dismiss its Counterclaim that Section 31.2 of the Construction Agreement expressly entitled APACT to an award of reasonable attorney's fees and litigation costs should CTC fail to cure a Default in a manner that is satisfactory to APACT. APACT argues that during the course of CTC's construction of the retaining wall, CTC deviated from the original design which caused the wall to fail. APACT further argues that it notified CTC on October 21, 2014, that it expected CTC to remediate the failure at its own expense pursuant to the terms of their Construction Agreement. In addition, APACT argues that CTC breached its duties under the Construction Agreement which caused the failure of the retaining wall and rendered the wall and subsequent work performed by CTC unfit for the purpose intended by APACT.

In reviewing the factual allegations in the Complaint and Exhibits thereto, and the parties' arguments, it is clear that factual issues exist regarding (1) whether the allegations pled in APACT's Counterclaim constitute a "Default" under the terms of the Construction Agreement, and (2) whether APACT's actions satisfy the steps required under the Construction Agreement to place CTC on notice to cure the alleged "Default". Should it be determined that CTC's actions constitute a "Default" and APACT's actions satisfied the steps necessary to place CTC on notice of curing said "Default," APACT may be entitled to attorney's fees and litigation costs. This issue is more appropriately raised in a summary judgment motion if there are no material issues of fact. Therefore, CTC's request for dismissal of APACT's demand for attorney's fees and litigation costs at this stage of the litigation is premature.

IV. **CONCLUSION**

For the reasons set forth above, the Court will deny CTC's Motion to Dismiss APACT's

Counterclaim (ECF No. 21). A separate order will follow.

Dated: May 28, 2015

BY THE COURT:

*signature*

LISA PUPO LENIHAN
United States Magistrate Judge

cc:   All Counsel of Record
      *via Electronic Case Filing*